<div style="float:right">NEW-YORK,<br>May, 1831.<br><br>Douglass<br>v.<br>Wilkeson.</div>

---

### DOUGLASS and DUNN *vs.* WILKESON.

The assignment of *part of a demand* due on a promissory note, gives no right of action to the assignee, as *endorsee*, either against the *maker* or the *payee*; the transfer of the note for less than the real sum appearing due, unless the residue has been extinguished, not constituting the assignee and *endorsee* within the law merchant.

An instrument for the payment of money, not payable to any particular person or to bearer, is not negotiable; and it was accordingly *held*, that a memorandum, made by a payee of a note for $2500, on the back therof, in these words, " Mr. Olcott, pay on within $750," did not authorize a recovery on the *money counts*, by the holder against the payee.

This was an action of *assumpsit*, tried at the Albany circuit in September, 1829, before the Hon. WILLIAM A. DUER, then one of the circuit judges.

The declaration contains four counts. In the first is stated the making of a note by one Heman Norton, bearing date 13th December, 1828, for the sum of $2500, payable ninety days after date, at the Mechanics' and Farmers' Bank, to the order of the defendant; then it is averred that the defendant, on the day of the date of the note, and before the payment of the money therein specified, or *of any part thereof*, endors-

ed the same, and by such endorsement ordered and appoint-
ed $750, *part of the contents of the note,* to be paid *to the plaintiffs,*
and delivered the note to them; that when the note fell
due, it was presented to the maker, and payment of the $750
demanded, which was refused, and notice given to the de-
fendant; by reason whereof the defendant became liable to
pay, and in consideration therof promised to pay, &c. The
*second count* charges the defendant as *endorser* in the usual
form, for *the whole sum* mentioned in the note. The *third
count* is general for goods sold and delivered, for money paid,
laid out and expended, money had and received, and money
lent and advanced; and the *fourth count* is on an *insimul
computassent.* The defendant pleaded the general issue. On
the trial of the cause, the plaintiffs produced the note de-
scribed in the declaration, on the back of which were endors-
ed the following words: "Mr. Olcott, pay on within seven
hundred and fifty dollars," signed "S. Wilkeson;" and on
the face of the note was written the following: "Discounted
for seven hundred and fifty dollars." The signature of the
maker of the note was admitted, as also the signature of the
defendant to the endorsement on the back thereof; and it
was further admitted that Mr. Olcott was, at the date of the
note, and still remained cashier of the Mechanics' and Far-
mer's Bank. The plaintiffs rested, and the counsel for the
defendant insisted that they were not entitled to recover:
1. Because the memorandum on the back of the note is not
an endorsement thereof, so as to vest any legal interest in
any person whatever, and certainly not in the plaintiffs; 2.
If such memorandum can be considered an endorsement to
pay $750 of the note, it is invalid, because an entire contract
cannot be divided and split up into several contracts; and
3. That the plaintiffs cannot recover as *endorsees* of the note,
the memorandum on the back of the note not being an en-
dorsement, but merely a request to Mr. Olcott to pay Samuel
Wilkeson, the *payee* of the note, $750; not an order on Nor-
ton, the *maker* of the note, to pay the same to the plain-
tiffs. A verdict was taken for the plaintiffs for $783,57, by
consent, subject to the opinion of this court, with liberty

to either party to turn the case into a bill of exceptions. The case was argued by

*M. T. Reynolds*, for the plaintiffs.

*C. P. Kirkland*, for the defendants.

BY THE COURT. It is very certain that the plaintiffs cannot recover on the first or second counts in the declaration, unless they are vested with the character of endorsees. It becomes important then to ascertain what constitutes an endorsement, according to the commercial code. "Endorsement is a term known in law, which, by the custom of merchants, transfers the property of the bill or note to the endorsee, and is usually made on the back of the bill, and must be in writing." *Cunn. on Exchange Law*, 43. No precise form of words is required to make a valid endorsement ; the signature of the endorser alone is all that is required to transfer a note or bill of exchange, because such signature, with the delivery of the instrument, gives the person to whom it is delivered a right to it, and to recover in his own name the amount of it from the maker or acceptor. By receiving the negotiable paper in that situation, he is vested with a right to make a full endorsement over the endorser's name. Endorsements may be made in blank, in full, conditional or restrictive. *Chitty on Bills*, 131. 1 *Cowen*, 538. The right of a person to sue in his own name on a bill of exchange, who is not a party to it, depends upon the title which he has derived from the payee. This title is by assignment, which the common law did not recognize, but which has its force from the custom of merchants. The statute extends the custom to promissory notes. 1 *R. L.* 151. This same custom must be appealed to in all questions where the validity or the effect of an assignment is called in question. It directs, Ch. J. Eyre says, in *Gibson* v. *Minet*, 1 *H. Black.* 605, that the assignment should be made by a writing on the bill or note, appointing the contents thereof to be paid to some third person, and in respect of bills drawn, payable to bearer, that the assignment should be constituted by delivery only. The contract which the maker of a negotiable note

NEW-YORK,
May, 1831.

Douglass
v.
Wilkeson.

enters into with the payee, is to pay him, or such person as he or his endorsee, or any endorser's endorsee shall direct, and there is consequently as much privity between the last endorsee and the drawer, and between him and the precedent endorsers, as there is between the drawer and the payee. The endorsement is an incident, and a part of the original contract. The endorsee holds the note, if not with precisely the same privileges, rights and advantages as the original payee, with nearly the same, against the maker. It would seem to be obvious to reason, that if the payee transferred none of the rights with which he was invested as payee against the maker, to a third person, that person could not be an endorsee. It would seem to be of the essence of an endorsement that the endorsee should take some of the endorser's rights. The creation of new rights between the endorser and endorsee, without the transference of any of those existing in the former, will not, I apprehend, make an endorsement; when, therefore, the contract between the payee of a negotiable note and a third person is of such a character as to give the latter no rights against the maker, to create no privity of contract between them, that contract is not an endorsement of the note within the custom of merchants. If this position be correct, we have only to enquire in this case whether the defendant transferred to the plaintiffs any right as against Norton, the maker of the note declared on, to enable us to determine whether the plaintiffs are endorsees. Could the plaintiffs recover in an action against the drawer of the note? Since 1698, when the case of *Hawkins* v. *Cardy* was decided, the law has been settled that the assignment of a *part of a demand*, due on a promissory note, does not enable the assignee to maintain an action against the maker. 1 *Ld. Raym.* 360. *Salk.* 65. *Carth.* 466, 12 *Mod.* 213. The principle of this case has been sanctioned, I believe, by all courts in which questions have arisen calling for its application, and reiterated by the most approved elementary writers on the law relative to bills of exchange and promissory notes. *Cunn.* 44, 75. *Bailey,* 72. *Chitty,* 139, 140. *Jacob's Law Dict. tit. Bills of Exchange.* 1 *Comyn's Dig. tit. Action on the Case,* 295. 3 *Kent's Comm.* 59.

The reason assigned for this principle is not as broad, it may be said, as the application now proposed to be made of it. The reason is, that a contract cannot be divided into parts so as to subject the party to several actions. This objection may be thought to apply only to the maker of the note, and not to the remedy which the endorsee has against the endorser. The principle changes the nature of the relation between the parties. It does not give to the transfer, or what is urged to be a transfer, the quality of an endorsement, according to the custom of merchants, nor to the plaintiffs the character of endorsees. The language of all the books is, that an endorsement transfers the property of the bill or note to the endorsee; what does less than that, is not in strictness an endorsement. The position of Mr. Justice Bayley, whose accuracy will not be questioned, is, that "an endorsement cannot be made, for the transfer of less than the full sum appearing to be due upon the bill or note." *Bayley on Bills*, 72. So the language of Chitty, as to the effect of a partial assignment, is of like import, though he follows it with the reasons for the rule of law, which have particular reference to the situation in which such an assignment would involve the acceptor. "Although an endorsement," he says, "may be made in blank, in full or restrictive, yet it cannot, after acceptance, be made for less than the full sum appearing to be due upon the bill, &c. transferred, because a personal contract cannot be apportioned; and it would make the acceptor liable to two actions." Chancellor Kent also says: "The *bill* cannot be endorsed for a part only of its contents, unless the residue has been extinguished." 3 *Kent's Comm.* 59. He assigns the reasons on which the rule is founded. Although he does not mention *notes*, the principle is equally applicable to them; for they are bills of exchange, the maker being both drawer and acceptor. The point now under consideration has been directly passed upon by the superior court of *South Carolina*. That court went much further than we are asked to go in this case, and probably further than we should feel ourselves willing to go, in a case like that before them. They decided that where the assignor had the entire interest in the note when he assigned

NEW-YORK,
May, 1831.

Douglass
v.
Wilkeson.

it, he was not an endorser, and the person taking it was not an endorsee, and could not maintain an action as such against the assignor, because he did not get the whole note by a single act; a part being assigned at one time, and a part at another, though both assignments were made the same day. The court say the endorsement of a part of a note or bill is bad; and if so, two vicious endorsements cannot make a good one. *Hughes* v. *Kiddell*, 2 *Bay*, 324. That action, as to the parties, was like the present—endorsee against endorser. The cases in which it has been held that an acceptance for part of a bill is good, were referred to on the argument by the plaintiff's counsel, as bearing on the question under consideration, but they do not apply, because there is no apportioning of a single demand: an entire contract cannot be split so as to give two actions against any party to it. The books recognize the distinction between the two cases. If the acceptor is sued, he is only responsible for the amount for which he has accepted; if he pays a part of the bill, it is supposed to be out of the drawer's funds, and the drawer is called on by the holder only for the residue. The acceptor has no claim on him, on the bill, for what he has paid on his acceptance. If he is an accommodation acceptor, he has his action for money paid to the drawer's use. If we consider the relative rights of the parties to this action, viewing them as endorsee and endorser, the case is involved in a manifest absurdity. It is absurd that an endorsee cannot maintain an action against the maker of the note. It is not pretended that the plaintiffs in this suit can maintain an action against Norton. The responsibility of the defendant, if he is to be regarded as an endorser, is conditional; he is liable to the plaintiffs only in the event that the *maker* of the note fails to pay to the plaintiffs; yet they have no right of action—no claim against the maker. The plaintiffs, as endorsees, must shew, before they can recover against the defendant as endorser, a demand of payment on the maker, a refusal and notice of non-payment to the defendant. The situation of the parties renders all this an idle ceremony. Shall the plaintiffs make a demand where they have no right? Shall they be required to give formal notice of a default,

NEW-YORK,
May, 1831.

Douglass
v.
Wilkeson.

where there can be no default, because there was no duty. We are therefore of opinion that the plaintiffs are not the endorsees of the note, and consequently, as such, cannot recover the amount thereof, or the $750. Had it appeared that when the note was delivered by the defendant to the plaintiffs the balance due on it was only $750, the difficulty which lies in the way of a recovery in this suit would be removed ; 2 *Wilson,* 262 ; but that fact was not shewn, nor are we permitted to assume it, if we were correct that we should do so in any case, because the declaration avers that *no part of the sum of money* mentioned in the note was paid when the transfer to the plaintiffs was made. Every endorsement, it is said, is the same thing between the endorser and the endorsee as the making of a new note. If this should be taken as literally true, it would not aid the plaintiffs, because, according to the foregoing views, there is no endorsement.

We are next to inquire if the memorandum on the back of the note is a check or draft on which the plaintiffs can recover under the money counts. A check or draft on a banker is defined to be a written order or request addressed to persons carrying on the business of bankers, drawn on them by a party having money in their hands, requesting them to pay, on presentment *to a person therein named or to bearer,* a specified sum of money. *Chitty on Bills,* 322. It is said in *Cruger* v. *Armstrong,* 3 *Johns. Cas.* 7, " A check, although generally received as cash, when given in payment, is in form and reality a bill of exchange. It possesses all the requisites of a bill, and has been treated as such." Lord Kenyon said, in the case of *Bohem* v. *Sterling,* 7 *T. R.* 430, that at the trial of that cause, he thought there was a distinction between a banker's check and a bill of exchange; but on further consideration, he did not think that distinction well founded. If a draft or check is required to have the requisites of a bill of exchange, and is to be treated as such, it will be at once perceived that the memorandum on the note in this case is not a draft or check. It does not specify any payee. To make a note within the statute, it must be payable to some person, body politic or corporate, his or their or-

der, or unto bearer, 1 R. L. 151; and this was only requiring, in relation to a promissory note, what the custom of merchants had established as requisite to make a valid bill of exchange. If there is a blank for the name of the payee, a *bonâ fide* holder may fill it up with his own, and then becomes a negotiable note; *Bayley on Bills, 23*; or, if it appear from whom the consideration came, he may be presumed to be the payee intended; but nothing of this kind is shewn by the memorandum on the note in question. Lord Ch. Baron Eyre says, in the case of *Gibson v. Minet*, before referred to; "If I put in writing these words, 'I promise to pay £500, on demand, value received,' without saying to whom, it is waste paper; if I direct another to pay £500 at some day after date, for value received, and not say to whom, it is waste paper." It is supererogation to fortify with authorities the position that an instrument, without being payable by its terms to some person or to the bearer thereof, cannot be negotiable paper. The position, as Bayley states it, is this: "Where a bill or note is payable otherwise than to the bearer, it must contain the name of the payee." *Bayley on Bills, 22.*

It may be useful to consider one or two cases wherein efforts have been made to convert memorandums into negotiable instruments. The supreme court of Massachusetts have decided that a person possessed of an order for the payment of money to 'No. 100 or bearer,' addressed to no particular person as drawee, could not maintain an action against the person subscribing it without shewing he came fairly by it for a valuable consideration. An action was brought by the possessor on a memorandum in these words: "Boston, 15th May, 1810; good for one hundred and twenty-six dollars on demand," signed, Gilman & Hoyt; and the court held it not sustainable. Parker, Ch. J. said: "It is not a negotiable promissory note; it is not payable to bearer; it is not a contract which is *ex proprio vigore*, constitutes a promise to whomsoever shall produce it." "It imports no promise to the holder without evidence it was actually given to him." 13 *Mass. R.* 158. In this case there is no evidence that the memorandum was given to the plaintiffs; and consequently a

NEW-YORK,
May, 1831.

Douglass,
v.
Wilkeson.

promise to pay them cannot be inferred from the bare possession... But if that difficulty was removed, the one we are considering would remain. Facts might be shewn, which, in connection with the memorandum, would make out a promise by the defendant to the plaintiff; yet the memorandum would still want the effect and character of a negotiable instrument, according to the custom of merchants; and wanting that character, it cannot be received as proof sufficient to warrant a recovery under the money counts in the declaration in this case. *Leonard* v. *Mason*, 1 *Wend.* 522, was cited on the argument as a case in which the court had substituted a payee where none had been indicated by the drawer of a bill. Whether there was a payee or not, was not distinctly raised in that case for the consideration of the court; but if it had been, we should not probably have had any difficulty in coming to the conclusion that the payee was sufficiently indicated. A. Leonard was the payee of a note drawn by N. Leonard. N. Leonard wrote an order or draft under the note, in the following words: "Levi Mason, Esq. please pay the above note, and hold it against me in our settlement." Signed, N. Leonard. There was a parol acceptance, and a promise to pay by the defendant, made to A. Leonard the payee of the note. This was held to be a bill of exchange. There could be no mistake as to the payee; the draft was to pay the note, and the payee of the the draft must consequently be the person who was entitled to receive payment of the note; and a payment to any other person would not have been a payment of the draft. If we apply the principle of that case to this, it will not help the plaintiffs. It has been clearly established, we think, that they are not the real endorsees of the note; and if they are not, it remains the property of Wilkeson; and he, and not they, would seem to be the payee indicated by the memorandum. Mr. Olcott could never have justified the payment of the sum mentioned in the memorandum to any other person than the owner of the note, and the note itself showed, if the previous reasoning be correct, that it had not been negotiated by the payee. If Mr. Olcott could have justified the payment to the possessor of the the note, it must have been on the ground

NEW-YORK, that the payment was in fact to Wilkeson. The memorandum
May, 1831. might have been construed as an authority to an agent to re-
Douglass ceive, and the possession of the order may have beeen regar-
v. ded as designating the person who was made the agent. But
Wilkeson. the possession of the note and memorandum would not au-
thorize the holder to make himself the payee by inserting his
name in the order, or the court to regard him as such, no
more than the possessor of the memorandum mentioned by
Lord Ch. Baron Eyre, "I promise to pay £500 on demand,
value received," could make it better to himself than waste
paper, by adding any thing to it.

An instrument that is not a bill of exchange, or a negotia-
ble promissory note, cannot be given in evidence, under the
common money counts. 10 *Johns. R.* 418. This obstacle
to a recovery by the plaintiffs in this action would remain,
even if the acknowledgment of value received in the note
could be transferred to the memorandum. If "value received"
were inserted in it, still it would not be a negotiable note or
draft, and consequently could not be proof under the money
counts; and the declaration contains no special count on the
draft. But whose acknowledgment of value received is
required? That of the defendant. How strange would be
the attempt to convert the acknowledgment of Norton,
made in the note, into an implied one of Wilkeson in the
memorandum. But if it should be granted that the memor-
andum was a valid check or draft, there would still be a fatal
objection to the right of the plaintiffs to recover. If it is a
check or draft, it is as a bill of exchange; and what is requir-
ed in relation to the one to sustain an action on it, is required
as to the other. The parties to it are the defendant as draw-
er, the plaintiffs as payees, and Mr. Olcott as drawee; the
payee cannot resort to the drawer without having given no-
tice of the non-payment by the drawee on presentation, or at
least, without shewing that there were not funds in the hands
of the drawee. Now in this case there is no notice of non-
payment to the defendant, or proof that the drawer had no
funds.

Judgment for defendant.