JOHN KINNEY V. LAWRENCE FLYNN.

Where a written instrument is attested by a subscribing witness, such witness must be called to prove its execution, unless the witness be dead or may be so presumed, or after diligent search or inquiry cannot be found, or is beyond sea or otherwise out of the jurisdiction of the Court or has become incompetent as a witness, and even the admission under oath of the party who executed will not enable the Court to dispense with the subscribing witness.

To authorize the admission of secondary evidence of execution, it is not enough to prove that the subscribing witness bears the same name as the wife of the party, who executed the instrument, but it must be proved that she is the wife.

A witness will not be allowed to prove the genuineness of a signature from a comparison of handwriting, but must testify from a knowledge previously acquired, either by having seen the person, whose signature is questioned, write, or by familiarity with and examination of writings admitted to be his, so as to be able to speak from the correspondence of the signature with an exemplar existing in his mind.

To prove the signature of a person, it is not enough to show that it is the same with the signature of a man bearing the same name, but it must be proved to have been written by the same person.

An acknowledgment written in a memorandum book in the following form; viz : " I. O. you the sum of one hundred and sixty dollars, which I shall pay on demand to you," is a valid acknowledgment of indebtedness, and parol proof is admissible to show the person to whom it is addressed.

Kinney v. Flynn.

This was assumpsit upon the following writing in a memorandum book, to wit: "I. O. you the sum of one hundred and sixty dollars, which I shall pay on demand to you," signed Lawrence Flynn and attested by Bridget Flynn, who affixed her mark. At the trial, evidence was introduced to show that the book was the plaintiff's. In order to prepare the way for the proof of the signature of the defendant by evidence that it was in his hand writing, the plaintiff called a witness, Scott, who testified, that he presented the book to the defendant and said to him, " the note appears to be witnessed by your wife, Bridget Flynn,—your wife, I suppose ?" To which the defendant replied, " yes, that is my wife's name ;" but the witness also testified that the defendant did not admit that it was his wife's signature. The plaintiff then called witnesses to prove the hand-writing. John Anthony testified that he had seen the defendant write and should think the signature was his hand-writing, that he should judge so from comparison ; and he produced several recepts signed by the defendant, some of which he felt certain he had seen the defendant sign, though he could not identify the particular ones. Lewis Pearce testified that he was not personally acquainted with the defendant, but had taken receipts from a person of his name, that he could not say he was looking over when said person signed, but presumed from his custom in such cases, that he handed the book across the desk and it was signed, and he judged from the signature on the book that this note was signed by the same person. The book in which the writing was contained was mutilated in several places by the loss of leaves and otherwise. The counsel for the defendant contended, that the writing was no valid admission of indebtedness from a want of certainty as to who was the payee, and that, even if the Court should think this defect might be supplied by extrensic proof,

Kinney *v.* Flynn.

yet the book should not be allowed to pass, unless the whole book was produced, inasmuch as it did not appear but that some of the lost leaves might contain proof of payment or other proof qualifying or explaining the naked admission produced. That where there was an attesting witness, she must be called at all events, if alive, and that, even if it were proved that she was the wife of the defendant, it would not excuse her absence, since she was the witness selected by the parties and they could not now be permitted to object to her. That the evidence in regard to the signature, even if it were admissible, was not sufficient, since it appeared that the witnesses formed the opinion that it was the hand-writing of the defendant, not from a familiarity therewith, obtained from seeing him write, or from its resemblance to an ideal impression made on their minds by an inspection of his writings, but from a comparison of hands; and that furthermore, the testimony of Pearce was inadmissible, because it did not appear that the person, with whose hand-writing he was familiar, was the same as the defendant. And the counsel asked the Court to nonsuit the plaintiff or to charge the jury that the writing was insufficient and the testimony incompetent to prove the signature, which the Court refused. The jury returned a verdict for the plaintiff and the defendant moved for a new trial upon exceptions to the rulings of the Court.

*Currey* for the defendant cited, 1 Greenl. § 569. 2 Phil. & Amos. 649. Chitty's bills 189. *Jackson* v. *Waldron*, 13 Wend. 199. 1 Greenl §5 72, to the point that, where there is an attesting witness, he must be called, and *Mudd* v. *Luckermore*, (5 Ad. & Ellis 703,) 1 Greenl. §580–581, to the point that handwriting must be proved not from comparison, but from the knowledge which the witness has in his mind of the characteristics

of the handwriting to be proved. To the point that the instrument, on which the action was brought, was void for ambiguity patent upon its face, he cited 1 Greenl. § 297, 1 Phil & Amos. 749.

*Cozzens* for the plaintiff contended, that where an instrument not requiring attestation is attested by an interested or incompetent witness, secondary evidence is admitted of course. *Swire* v. *Bell and others*, (5 Term 371,) *Amherst Bank* v. *Root*, (2 Met. 533,) in which latter case the Court held the execution of an instrument, not requiring attestation, might be proved by any competent evidence. To make the witness a subscribing witness her hand writing should be capable of proof, if she were dead, but here her only signature is a mark, which is not witnessed and cannot be proved. (1 Greenl. § 578–581. 1 Greenl. § 573, note 3.) That the note was not void for ambiguity. (1 Greenl. Sections 277, 284 a. 288.) *Fisher* v. *Leslie*, (1 Esp. 426.) Chitty on Bills 243, note 1. *Israel* v. *Israel*, (1 Camp. 499.) *Childers* v. *Boulnois*, (16 Eng. Com. Law. Rep. 411.) *Evans v. Philpots*, (9 Carr. & P. 270.) *Washburn* v. *Elsee*, (47 Eng. Com. Law. 35.) *Beukley Ex parte* (14 M. & W. 469. Bailey on Bills, pp. 5, 6, 7, 30. Chitty on Bills, pp. 3, 8, 244.

BRAYTON, J., delivered the opinion of the Court. The first ground for new trial, assigned by defendant's counsel, is that the Court permitted evidence of a secondary character to pass to the jury, in proof of the defendant's signature to a writing attested by a subscribing witness, without the plaintiff's sufficiently accounting for not calling such witness. The paper offered in evidence and the execution of which was proposed to be proved was as follows :

" I. O. you the sum of one hundred and sixty dollars, which I shall pay on demand to you.

(Signed,)    LAWRENCE FLYNN."

Witness present,
                Her
Bridget ⋈ Flynn.
          mark.

It was written on a small memorandum book, which, as the evidence tended to prove, belonged to the plaintiff.

The evidence offered by the plaintiff, and the only evidence to account for the absence of the witness, was the testimony of Elijah Scott, as to admissions made by the defendant. The witness said to defendant, " the note appears to be witnessed by your wife, Bridget Flynn? your wife I suppose ?" and the defendant replied " yes, that is my wife's name ;" and the witness also testified that the defendant did not admit that it was his wife's signature. And the question is, whether the Court erred in allowing secondary evidence of the defendant's signature to pass to the jury.

The general rule is well settled, that when there is a subscribing witness, that witness must first be called to prove the execution. (1 Greenleaf's Ev. p. 569.) The rule, however, has its exceptions, all founded upon the inability of the party, without any fault of his, to produce the witness upon the stand, as if the witness be dead or may be so presumed, or after diligent search or inquiry cannot be found, or is beyond sea or otherwise out of the jurisdiction of the Court, or has become incompetent as a witness from insanity, interest or otherwise. In all these cases the party is permitted from his inability to produce the witness, to offer secondary proof.

So stringent and universal is the rule that even the express admission of the party, or his answer under oath in chancery, cannot be given in evidence, until it is first

44

shown that the witness cannot be had. The reason assigned is that the subscribing witness is the witness agreed upon by the parties, they mutually refer to him for proof of the execution, and the parties each have a right to his testimony as to all the circumstances attending the transaction, many of which may not be in the recollection of the parties, or not proveable in any other way, and the defendant has the right to cross-examine him.

This is alone the primary evidence, all other being by the rules of law secondary in its nature ; and for that reason neither the admission of the party nor his answer in chancery can be admitted as primary proof.

Now the plaintiff claims to have shown his inability to produce the witness by the testimony of Elijah Scott, and to have proved that she is the wife of the defendant and that she was so at the time of execution. This proof is the admission of the defendant. No other evidence was offered, and we are asked to say that Flynn's wife subscribed as a witness upon his admission of the fact, when the witness says expressly that the defendant did not so admit. There was in fact no proof that she was the subscribing witness. The proof goes to an identity of names and not of persons. For anything that appeared in evidence, the person who did subscribe as the witness may now be living in the neighborhood of the place where the writing was executed, entirely disinterested and competent as a witness. There should have been proof, some proof not that the defendant's wife was named Bridget, but that she was the witness. No inquiry was made for the witness, for any person of that name, who would probably have been called as a witness, nor of the defendant's wife, whether she was the witness,

The plaintiff claims that this is no attestation in law, the witness having merely made her mark without writing her name and claims that such attestation is a mere nullity.

It is no objection to the attestation of a will that the witness made her mark. It still appears that She was a witness of the execution—the witness upon whom the parties rely for proof of the fact. The only difficulty in such cases is that where the witness cannot be produced, one usual mode of secondary proof cannot be had, viz: the hand-writing of the witness. But it in no way affects the testimony of the attesting witness himself. It is still as important to the parties to have his knowledge of what took place at the time. It neither affects his competency or his means of knowledge.

It was urged by the plaintiff's counsel that the question was submitted to the jury, whether the subscribing witness was the defendant's wife, and as the jury have found that fact, their verdict concludes the matter. This does not to our mind avoid the difficulty. The question is not whether the jury erred, but whether the Court committed an error in admitting secondary evidence, upon the proof offered to them of the plaintiff's inability to produce the primary proof. We think the Court did err in that respect, and that there was not evidence upon which either the Court or the jury should have found the fact.

Another error of the Court is assigned by the defendant's counsel as ground for a new trial, which though not necessary to consider, it may be proper in view of the new trial which must be ordered, that the Court permitted the testimony of Anthony and Pearce of their opinions and judgment founded on comparison of the signature of the writing in question with other signatures of the defendant, and not from their knowledge of and famil-

iarity with the hand-writing of the defendant, contrary to objection made at the time.

Every man's hand-writing has a definite and distinct character, so much so that those familiar with it are, at all times, able to distinguish it from all others. It is this knowledge of hand-writing which forms the basis of reliable testimony on this subject. The witness should have an exampler in his mind, so that upon the presentation of a signature he can say that it corresponds or not with that in his own mind, which, the theory of the law supposes, every witness to have.

But the difficulty is a practical one, viz : to ascertain when a witness has such knowledge, when his mind is impressed with the image or sufficiently impressed.— Some men must be long conversant with one's hand to receive even a faint impression, while others receive it readily, even upon a single examination.

The law, therefore, from the inherent difficulty will not undertake to define the extent of this knowledge, which a witness must possess or inquire into the ability of the witness. It will only inquire, if he had any means of acquiring the requisite knowledge and impression of the character of the party's hand. There are two modes of doing this which the law permits ; first, by having seen the party write ; second by familiarity with and examination of writings admitted to be his. If he has these means in any degree, the Court will not undertake to measure the knowledge derived from them. It will be left to the jury to determine whether his knowledge be sufficient to be reliable.

But the witness should be able from such knowledge, previously derived from such means, to say that he has such knowledge as would enable him to detect the hand-writing of the person in question, and to distinguish it

from others. If he cannot say this, he is not competent as a witness ; he has not the competent knowledge. If he can say that it is derived from the means before stated, he should be admitted to testify. But he is not permitted to testify, from mere comparison of the writings, that the one is the same hand-writing as the other and that he judges from that comparison, that they are the production of the *same* hand. This kind of testimony supposes the absence of the very knowledge required by the rule.— This much any witness might do, upon first sight of the writing, without any previous knowledge whatever.

Now, the witnesses, Anthony and Pearce, did testify that by comparing the writings produced, they were the same hand in their opinion. Anthony had seen the defendant write and testified that from that fact he also judged the signature to the paper in question was his.— Pearce had seen his hand-writing to receipts taken by him ; assuming for the present the identity of the person signing the receipts with the defendant. And the question now raised, is whether on this state of the facts and of the law, it was competent for them to testify to the genuineness of the signature in question.

The judge charged the jury, that comparison of hands was not competent evidence for them to consider, as evidence of hand-writing. The question was not put to the witnesses in an objectionable form. Their opinion was not asked upon a comparison of the writings. It was, therefore, not the fault of the party but of the witnesses, that such answers were in. We suppose it to be in the discretion of the Court at once to rule out the answer or in the charge to the jury, to direct them that it is not proper evidence for them to consider. This last was done and we are to presume the instruction was regarded.

The third ground for a new trial is that Pearce testified,

so far as he testified from knowledge of the hand writing, from his knowledge derived from signatures of a person known as Lawrence Flynn, without any proof of his identity with the defendant. Now, the point to be proved was the signature of the defendant to the paper produced in evidence. It is a knowledge of *his* hand writing, that the witness is required to possess in order to be allowed to testify to that point. It should then appear, at least, that he has had the means of acquiring a knowledge of defendant's hand-writing and not another's, and unless the identity is made to appear, the means of the requisite knowledge is certainly wanting to the witness. The witness did not identify, nor was there any proof of such identity from any other source.

So far then as regards the witness Pearce, his testimony was clearly not admissible, it not appearing that he had the means of knowing the hand-writing of the defendant, whatever knowledge he may have had of another's, he not knowing whether the defendant was the man whose receipts he had taken and whose hand-writing he had seen.

The fourth ground assigned by the defendant's counsel for a new trial is that the writing declared on is void for uncertainty, that it is not a promissory note or evidence of indebtedness and is void for uncertainty, there being no payee named therein, and, being a case of patent ambiguity, is not susceptible of explanation by parol.— The only ambiguity, which the defendant's counsel claims to exist in the writing produced, is in the word " you," which he claims is indefinite and falls within the rule, which excludes parol evidence from being admitted to contradict, alter or vary a written instrument, and, he objects, that parol proof was admitted to show to whom this writing was addressed and delivered.

Now, the necessary inquiry is, in what respect the parol evidence in any way contradicts, alters or varies any thing that is written. The acknowledgment of indebtedness is the same, the amount the same, the promise to pay the same, the time of payment the same, with or without the parol evidence. Every thing intended to be contained in the writing is clear and explicit and not to be misunderstood. It is clearly an acknowledgment of indebtedness to the amount of one hundred and sixty dollars to the person to whom it is addressed. That person was not intended as appears from the writing itself to be ascertained in the tenor of the writing. By its tenor it refers to something extrinsic by which he is to be ascertained.— Id certum est quod certum reddi certum potest. The writing is addressed to a person present ; the promise is to the person addressed. The paper supposes it is to be handed to the payee and by that means he is made certain. That proof is offered, to give effect to the paper in the mode contemplated by the writing itself.

Had the writing been enclosed in an envelope directed to the plaintiff, the defendant would hardly have objected that the name was on the envelope and not upon the written paper itself and yet the proof would have been in its nature the same. In substance and effect the defendant says by this writing, I will pay to the person I am now addressing, one hundred and sixty dollars on demand, and the question really is, who was he addressing. The witness neither gives the name nor professes to do so, but refers us to extrensic evidence to ascertain it.

The authorities cited by the plaintiff's counsel fully sustain the admissibility of the evidence. *Fisher* v. *Leslie*, (1 Esp. 426.) *Evans* v. *Philpots*, (9 C, & P. 270.) *Israel* v. *Israel*, (1 Camp. 499.) *Waithman* v. *Elsie*, (47 E. C. L. Rep. 35.) *Childers* v. *Boulnois*,

(16 E. C. L. Rep. 411.)  *Beukley ex parte,* (14 M. &
W. 469.)  *Brown* v. *Gilman,* (13 Mass. 158.)  *Douglas.*
v. *Wilkinson,* (6 Wend. 644.)