CHARLES SCHOOP *v.* GEORGE L. CLARKE *et al.*, Executors of
·James Chappell and Joseph L. Chappell.

It is essential to the defense of usury, that there should be a corrupt agreement
between the parties to the loan, that the lender shall have secured to him a
greater rate of interest than that allowed by statute.

Where a note or bill is made for a larger amount than the party discounting it
expected to advance, and it is agreed that the paper shall be negotiated for
the security of the amount advanced only, the transaction is not usurious.

It is no variance to count upon the note or bill, and to prove on trial, to rebut
the defense of usury, that only a part of the face of the note is demanded.

APPEAL from a judgment of the Supreme Court. The
action was upon a promissory note by an indorsee against
the maker and indorser. It was made by the defendant,
Joseph L. Chappell, to the order of the original defend-
ant, James Chappell, whose executors have been made
defendants in his stead, and was dated September 29, 1857,
and was for the payment of $265 in two months from date,
at a bank. The defense was usury.

It was proved that it was made and was indorsed by James
Chappell for the accommodation of Nathan L. Chappell, who
is the brother of the maker and the first indorser, and was
placed in the hands of Nathan to raise money upon for his
use. It was first negotiated to James Ray and Amos Ray,
under whom the plaintiff claims as indorsee. They advanced
to Nathan L. Chappell, in a few days after the date, the sum
of $250. The defendants claimed that the difference between
this sum and the amount of the note—$15—was an usurious
premium. Nathan L. Chappell testified, as a witness for the
defendants, that he sold the note to the Rays for $250,
the business being transacted between him and James Ray;
and he denied any recollection of any other amount. James
Ray was examined on behalf of the plaintiff, and testified,
in substance, that the maker and first indorser resided at
Rochester, and that he and Amos Ray, and also Nathan L.
Chappell, resided at, or in the immediate vicinity of Buffalo;

that a few days after the date of the note N. L. Chappell came to him, bringing it with him, and said that his brother, James, the first indorser, had written him to come and see him, the witness, and stated that it would be a great accommodation to him, James Chappell, if the witness would let him have some money; that the witness replied that he would be glad to accommodate said James; that said James held a mortgage against him for $6,000, upon which an installment of $1,800 would be payable the ensuing spring, and expressed some apprehension that he should not be able to pay it; that said Nathan remarked that his said brother thought that the witness might be laying up money to meet his spring payment, with which he could accommodate him, said Nathan; that the witness inquired how much money said Nathan wanted to get, to which the brother replied, after making figures with a pencil, that he could get along with $250, but must have that sum; that his brother, said James, would show him no mercy as a creditor if he thought he could accommodate him, said Nathan, and would not do it, but if he did accommodate him he would be very indulgent. The witness stated that the conversation was continued the next day, when he inquired of said Nathan why he did not bring an order for the money from said James, to which he replied that he did not know whether he had the money; that the note would stand as good as an order, and that the $15, which the note exceeded the $250, could be arranged the next spring, when the witness would make the payment on the mortgage; that the witness thereupon let him have the $250 and took from him the note, he indorsing it. The witness could not state that said Nathan said in terms that the money advanced would be allowed on the mortgage, but that such was the substance of the conversation as he understood it. The witness positively denied that he was to have the $15 for advancing the money. He said he did not buy the note, but took it by way of voucher for the amount advanced. The aforesaid evidence of James Ray was received against the objection of the defendants, who excepted to the ruling.

The defendants claimed to have the jury instructed to render a verdict for the defendants, and excepted to the ruling by which that instruction was refused.

The judge charged that the note first had an inception when negotiated by Nathan L. Chappell, and if it was sold or discounted at a discount of $15, it was usurious. But he further charged that "if they found from the evidence that the arrangement between Chappell and Ray was that Ray should discount the note in part, and to the extent of $250, by advancing that amount upon it, with the understanding that the note should be held for that sum and interest thereon only, and should be allowed on the mortgage in the spring at $250 and interest thereon only, without any benefit or interest in Ray in the excess beyond that sum, the transaction would be a valid one, and in legal effect it would be the same as if the note had been reduced by indorsement to $250 and interest, and then transferred for that sum, and in such case the plaintiff would be entitled to recover to the amount of $250 and interest thereon." The defendants' counsel objected to this instruction, claiming that there was no evidence on which to base it and that it suggested an unauthorized departure from the case made by the complaint, which counted for the whole amount of the note, and not for an advance of a portion of that sum.

The verdict was for the plaintiff for $250 and interest; and the judgment was affirmed at a General Term. The defendants thereupon appealed here.

The case was submitted here on printed arguments.

*George F. Danforth*, for the appellants.

*John C. Strong*, for the respondent.

DENIO, Ch., J. It is essential to the defense of usury that there should have been a corrupt agreement between the parties to the loan, that the lender should have secured to him a greater rate of interest than that allowed by the statute. It is not of course necessary that such an agreement should be expressed in terms. If such is the effect of the transaction

into which the parties enter, it is an usurious contract. If N. L. Chappell, in the case before us, had negotiated the note, on which the action is brought, to the Rays for an amount less than its amount with legal interest, without anything to qualify the transaction, the difference between the money payable by its terms, and the sum advanced by the purchaser, would have been an usurious premium, because there would have been nothing else to which the excess could have been referred. But if Chappell, having the note in his possession, with authority to negotiate it in a lawful way, had negotiated for a sum less than its amount, taking from the lenders an explicit agreement that they were not to hold it or claim, or collect, by means of it, a larger amount than that which they had advanced with lawful interest, there would have been no usury in the transaction, for the reason that there would have been no corrupt agreement. It is quite usual for notes and mortgages to be drawn, dated and executed preparatory to a loan, and providing for the payment of interest from their date, and afterward made operative by delivery and the advancing the amount of the principal sum mentioned in them. In such cases an amount would, *prima facie*, be secured to the lender greater than the sum loaned and the legal interest, and the securities would be liable to the charge of usury; but if it could be shown that such was not the intention, but, on the contrary that it had been expressly agreed between the parties, that interest should be payable only from the time the money was advanced, the defense of usury would be repelled. It very frequently happens that notes and bills prepared for the purpose of being discounted, are made for a larger amount than the bank or other party which is expected to be the lender is willing to advance. If in such case, it be agreed that only a part of the amount should be lent and that the paper should be negotiated for the security of that amount only, the transaction is not usurious. The convenience and safety of the parties would no doubt be promoted by a written statement annexed to the paper setting forth the actual state of the facts; and this is understood to be a very usual method in such cases.

But whether the evidence exists in such an authentic form, or is otherwise satisfactorily established, it is equally effectual to rebut the allegation of usury. In whichever way the fact is established, when satisfactorily shown it equally disproves the existence of a corrupt agreement between the lender and the borrower. It is surely unnecessary to refer to authorities to establish so plain a proposition. Several such are recited in the case of *Condit* v. *Baldwin* (21 N. Y., 209); and the principle is asserted or conceded both in the principal and dissenting opinions. The doctrine of the necessity of an actual corrupt agreement in order to predicate the vice of usury was there carried to an extent to which all the judges could not agree. But the general proposition that usury could be repelled by showing the absence of such a contract met the assent of all the members of the court.

I do not understand the counsel for the defendant to maintain the opposite of what has thus far been stated. His position is that if a note could be negotiated for a less amount than the sum stated in it, the arrangement would be a substituted agreement, and would require to be stated specially in the complaint. The complaint in this case takes no notice of the circumstance that the paper was held for less than the amount expressed in it, but is in the usual form adopted when the whole amount is sought to be recovered; and hence it is argued that the plaintiff ought not to have been permitted to answer the allegation of usury by proof of the special circumstances of the case; that in the absence of such proof the evidence of usury would be complete; and that upon such evidence being given, the plaintiffs' case was fatally variant from the one stated in the complaint. These objections are not in my opinion sound, though it may be admitted that they are specious. The note on its face contains no feature of which usury could be predicated. That was attempted to be made out by the parol evidence. There is nothing respecting interest, whether lawful or excessive, in it. The defendants made out by parol a *prima facie* case of usury; but this was subject to be met and disproved by the same species of evidence. As to the alleged variance, I do

not think the case could have presented any difficulty under the former more strict system of pleading. The contract set up in the complaint, and the one established by the evidence are identical. It is a promissory note, having a certain person as maker and certain others as indorsers, which was counted upon and which was proved by the evidence. Simply there was a circumstance brought out on the trial which showed that the plaintiff was not entitled to recover the whole sum of $265, but only $250 and the interest, except on the question of usury, it would have been for the interest of the defendants and it would have been their right to have themselves proved that circumstance, to reduce the recovery. It would not have established that the plaintiff was not the holder of the note, but only that he held it under such circumstances that he could not recover the whole amount but only so much as had been advanced when the note was first negotiated. But the defense of usury being set up, and supported by *prima facie* evidence, it became the interest of the plaintiff to show the peculiarity in the case, namely, the partial want of the consideration advanced upon its negotiation, in order to repel the presumption of usury. When this was once shown, it had the double effect of establishing that there was no usury in the contract, and that the note could not be lawfully enforced for an amount beyond that which was advanced and the interest. The giving of that evidence did not have the effect to substitute a parol contract for the written one contained in the note, but to establish a partial defense to the written contract.

The case of *Douglass* v. *Wilkinson* (6 Wend., 637), on which some reliance is placed, cannot aid the defendants. The payee of a note for $2,500 indorsed on the back of it over his signature these words, "Mr. Olcott, pay on within seven hundred and fifty dollars," and obtained that amount of money from the bank of which Mr. Olcott was the cashier. The plaintiff appears to have been indorsee of the bank. The question was whether the writing was a legal indorsement and transfer of the note, and it was held that it was not. This was partly on the ground that an entire

contract could not be divided.  It was shown, moreover, by authority, that a bill could not be indorsed for a part only of its contents, *unless the residue had been extinguished.*  The indorsement in the case before us was in the usual blank form, and did not purport to divide or split up the note, and transferred the whole note.  The balance of the note beyond the amount advanced by the Rays was effectually extinguished.  The general indorsement transferring, as it did, the whole contract, there was nothing remaining in the payee.

The case came up again after the declaration had been amended by setting out the note as one made for $750, and indorsed by the defendant, the payee, to the plaintiff.  The facts were that the defendant, who indorsed for accommodation, had declined to indorse for the whole $2,500, and therefore indorsed specially, as has been mentioned, and it was discounted for the $750.  The plaintiff was permitted to recover that amount upon that state of facts, and the recovery was sustained by the Supreme Court and by the Court for the Correction of Errors. (17 Wend., 431 ; 22 id., 559.) A remark of Mr. Justice BRONSON, in the course of the opinion of the Supreme Court, recognizes very distinctly the correctness of the view which I have taken of the present case.  He says : " It is not unusual, I believe, to discount accommodation paper for a less sum than the nominal amount; and I am not aware that the right of a holder to treat it as a valid security against all the parties for the amount at which it was discounted has ever been questioned.  I do not speak of a usurious discount, but of a transaction like the present one, where the note was received by the bank in the same manner as though it had been drawn for $750, and nothing more than the legal discount was charged upon that sum."

The testimony of James Ray, though it was to some extent disputed by N. L. Chappell, was sufficient to take the case to the jury.  He said positively that the understanding was not that the Rays were to hold the note for the whole amount, so as to realize the $15 difference, but only for the amount which he and the other Ray advanced.

I am satisfied that the Supreme Court was right, and that the appeal was without substantial merits, and am for affirming the judgment appealed from.

Hogeboom, J. 1. The suit is on a note for $265, dated September 29th, 1857, at two months, drawn by Jos. L. Chappell, and indorsed by James and Nathan Chappell. This note was duly proved and protested, and plaintiff rested.

2. The defense was that it was an accommodation note, signed by Joseph and indorsed by James for the brother Nathan to raise money on, and that he procured it to be discounted by one James Ray (against whom James Chappell held a mortgage), at a usurious rate, to wit, for a premium of $15, when the note had less than two months to run. This defense was in substance proved by Nathan Chappell.

3. The plaintiff undertook to answer this defense by James Ray by proving that he did not discount the note for usury, nor take or reserve $15 out of the amount, but discounted it for $250, which he advanced and paid to Chappell, and held it, and was to hold it for that amount only expecting to apply it as so much toward the mortgage he owed the Chappells. This testimony was not objected to, on the ground that it differed from the pleadings.

4. The judge charged that if the transaction was a loan of $250 for that amount of money advanced, and the note was not to be held for any larger amount, and such was the understanding of the parties, the transaction was lawful, and the plaintiff could recover as upon a loan for that amount.

This charge was excepted to, first, as not being within the range of the fact; and second, as the action was brought upon the note as an entire contract to recover the whole amount, and not a portion of the note, but not specifically upon the ground that it was not within the issue of the pleadings.

5. I think the charge was correct, and was unexceptionable in point of law. There were also sufficient facts in the testimony of James Ray to jusitify its being submitted to the jury in that aspect of the case.

The defendant, it is true, objected that the note was for a *larger amount*, and that the plaintiff claimed to recover the whole, but that is not precisely the objection of variance. If it was, the judge would have had a right, I think, to conform the pleading to the facts proved, to disregard the variance, and to treat the pleadings as amended. That was a matter of discretion, and if he had in terms exercised such a power, I think its correction would have been beyond our reach.

It was still a note for $265 on its face, which Ray discounted, and it remained so, though the whole amount was not discounted upon it. It was *that note* which Ray discounted. When he received it there was not so much due upon it, and he discounted it for the lesser sum. The plaintiff erred in the amount he claimed to be due, but that is not material.

6. The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.