Day, J.
John W. Erwin and Clark Lane indorsed a note for §2,000, for the accommodation of the makers, Callender & Co., to enable them to get it discounted, but without any particular agreement what usé should be made of the paper. The note indorsed by them was commercial paper, and their liability thereon is clearly defined by law. No party thereto could change the legal effect of the instrument, as to them, without their assent. Their' indorsement was in blank, the legal effect of which, when negotiated by the makers as contemplated by them, was, that if, when duly presented, it was not paid by the makers, they, the indorsers, would, upon due notice given them of the dishonor, pay the same to the holders. Story on Prom. Notes, sec. 135.
The indorsee or holder of the note might fill up the blank indorsement, and make the note payable to himself, or to his order ; but he would not be at liberty to write over the indorsement any words changing the legal liability of the indorsers, there being no agreement by them to the contrary. Story on Prom. Notes, sec. 138.
Their contract was single and entire, and could not be split up, by writing over their indorsement a promise to pay part of the note to one person, and part to another. Edw. on Bills, *280; Douglas v. Wilkeson, 6 Wend. 637; Gibson v. Cook, 20 Pick. 18.
When the note was negotiated and delivered to Shaffer & Curtis, whatever right they obtained therein, was a right to *the entire note; they were the indorsees and owners thereof. Neither they, nor Callender & Co., could transfer a portion of the note, “so *497 as to give the transferee a right of action for that portion in his own name ” against the indorsers. Parsons’ Mer. Law, 127.
The note was neither indorsed nor delivered to Lynn & Young.. They were not, therefore, the owners of any part thereof; nor was there any privity of contract between them and the indorsers. At most, there was but a contract between Lynn & Young and the indorsees and makers of the note, that $800 of its avails should be held for their benefit, by Shaffer & Curtis, who gave them their “ receipt for the part of the note so pledged ” to them.
From the arrangement between the parties (to which, however, the indorsers were not parties), it would seem that Shaffer & Curtis held the note for their own benefit, and also that of Lynn & Young.
Shaffer & Curtis sued the makers and indorsers of the note; and, as may be fairly inferred from the undenied allegations in the second defense, recovered the full amount of $2,000, which was duly paid by the indorsers..
If this be so, Lynn & Young possibly have a remedy against the parties with whom they contracted, and who hold the' money to-respond to the receipt given for their “ part of the note.”
But it is said dehors the record, that Shaffer & Curtis sued for and recovered only $1,000, the amount of the note of Callender &. Co., payable directly to themselves. Still the rights of the indorsers against Lynn & Young remain the same. If anybody had. a right to recover the $800 in controversy against the indorsers, it was Shaffer & Curtis in their suit against them on the note; for they held the legal title to the entire note 'for themselves, and, as to the $800, in trust for Lynn & Young.
Whether they recovered a judgment for the full amount or not,, having recovered a judgment on the note, they are estopped from another recovery thereon ; and, as Lynn & Young claim title, not as indorsees of the note, but as holding an interest therein under Shaffer & Curtis, they are in ^privity with them, and are also estopped. 19 Wend. 207; 16 N. Y. 548 ; 2 Smith’s Lead. Cases, 756.
While it does not .appear that the indorsers of the note, either by . the protest or otherwise, had notice of the claim of Lynn & Young, it is admitted by the pleadings that the latter had full knowledge-of the rights of Shaffer & Curtis in the note when they obtained their interest therein, and had full knowledge of the progress of their suit thereon against the indorsers.
*498 Whatever interest they had in the note, they had intrusted to Shaffer & Curtis, and if they continued to do so, without coming in themselves and asserting their rights in that action, we think they ■must abide the result. For, as already stated, the contract of the •indorsers was entire, and could not be so changed by the indorsees :as to subject them to a multiplicity of suits thereon in favor of different parties.
This was commercial paper, subject to well-defined usages and rules, and not the assignment, to different parties, of a chose in action becoming due iu the future and in installments, where, doubtless, as held in the case of Field v. The Mayor, etc., of New York, 2 Selden, 179, one of the assignees may bring in all the parties in equity and obtain relief; but it is rather the case, where it as conceded in the opinion in that case, that a recovery by one assignee would be final as to all.
It was not a part of the note only that was merged in the judgment, but as the contract was entire, the merger was entire. Whatever interest Lynn & Young took in the note, they took it ■subject to the contingency of a single action upon a single contract
We think the language of Judge Story, in an analogous case -may be applied to an indorser standing like those in this case: “ He has a right to stand upon the singleness of his original contract ;and to decline any legal or equitable assignments by which it may be broken into fragments. When he undertakes to pay an integral sum to his creditor, it is no part of his contract that he shall be ■obliged to pay in fractions to any other persons.” Mandeville v. Welch, 5 Wheat. 277.
*This view of the case renders it unnecessary to consider «other questions presented in argument.
The judgment must be reversed.
White, Welch, and Brinkerhoee, JJ., concurred.
•Scott, C. J., having been of counsel, did not sit in the case.